## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| REAL TIME MEDICAL SYSTEMS, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 8:24-CV-00313-PX |
| POINTCLICKCARE TECHNOLOGIES INC. d/b/a POINTCLICKCARE | |
| *Defendant.* | |

## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF
## <u>POINTCLICKCARE'S RENEWED MOTION TO DISMISS</u>

Brian T. Burgess (D. Md. Bar No. 19251)
William C. Jackson (admitted *pro hac vice*)
Ashley M. Drake (admitted *pro hac vice*)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4215
Fax: +1 202 204 7285
BBurgess@goodwinlaw.com
WJackson@goodwinlaw.com
Amdrake@goodwinlaw.com

Jeremy M. Bylund (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 10006-1238
jbylund@willkie.com

*Attorneys for Defendant PointClickCare Technologies Inc.*

Dated July 23, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.    RTMS mistakes several fundamental legal standards. .......................................... 2

II.    Count I: RTMS fails to state a claim under the Maryland Act or the Cures Act................ 5

III.    Count II: RTMS's nonresponse all but concedes that its hands are unclean. ..................... 6

IV.    Count III: RTMS fails to plead tying. .................................................................. 8

V.    Count IV: RTMS fails to plausibly allege tortious interference with a contract. .............. 10

VI.    Count V: RTMS was not an intended beneficiary of PointClickCare's contracts............. 11

VII.    Count VI: The breach-of-contract claim is moot. ............................................. 15

VIII.    Count VII: RTMS's claim for injunctive relief should be denied.................................. 15

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Park Hotels & Resorts, Inc.*,
 2025 WL 973016 (4th Cir. 2025) ............................................................8

*Aleti v. Metro Balt., LLC*,
 279 A.3d 905 (Md. 2022) ...................................................................6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2008)..........................................................................2, 3

*Avens v. Dixon*,
 2025 WL 379959 (E.D.N.C. Jan. 9, 2025) ...........................................8

*Balt. Bedding Corp. v. Moses*,
 34 A.2d 338 (Md. 1943) ....................................................................6

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)...................................................................1, 2, 3

*Caha v. United States*,
 152 U.S. 211 (1894)..........................................................................3

*Cal. Chamber of Com. v. Becerra*,
 No. 2:19-CV-02019, 2020 WL 1030980 (E.D. Cal. Mar. 3, 2020).........15

*Conley v. Gibson*,
 355 U.S. 41 (1957)............................................................................2

*CX Reins. Co. Ltd v. Johnson*,
 282 A.3d 126 (Md. 2022) ...............................................................12, 13

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
 36 F.3d 1147 (1st Cir. 1994).............................................................9

*Eastman Kodak Company v. Image Technical Services, Inc.*,
 504 U.S. 451 (1992)..........................................................................9

*Ecology Servs., Inc. v. GranTurk Equip., Inc.*,
 443 F. Supp. 2d 756 (D. Md. 2006) ....................................................15

*Fowler v. Printers II, Inc.*,
 598 A.2d 794 (Md. App. 1991)...........................................................10

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ................................................................6

*Hicks v. Gilbert*,
    762 A.2d 986 (Md. Ct. Spec. App. 2000) ..............................................8

*Lake Shore Invs. v. Rite-Aid Corp.*,
    509 A.2d 727 (Md. App. 1986)..............................................................10

*Martin Marietta Materials Inc. v. Redland Genstar Inc.*,
    No. 96-59066, 1999 WL 33955337 (D. Md. Sep. 8, 1999).....................14

*Real Time Med. Sys. v. PointClickCare Techs., Inc.*,
    131 F.4th 205 (4th Cir. 2025) ................................................................7

*Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*,
    511 A.2d 492 (Md. 1986) ......................................................................11

*RRC Ne., LLC v. BAA Md., Inc.*,
    994 A.2d 430 (Md. 2010) ......................................................................10

*S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) ................................................................9

*Savannah River Elec. Co. v. Fed. Power Comm'n*,
    164 F.2d 408 (4th Cir. 1947) ................................................................5

*Sherwood Brands, Inc. v. Levie*,
    No. RDB 03–1544, 2006 WL 827371 (D. Md. Mar. 24, 2006) ............13

*Wm. T. Burnett Holding LLC v. Berg Bros. Co.*,
    175 A.3d 876 (Md. Ct. Spec. App. 2017) ............................................12

**Statutes**

21st Century Cures Act, Pub. L. No. 114-255, 130 Stat. 1037................................1, 2, 5

2023 Md. Laws Ch. 333 (S.B. 648) ................................................................1, 5, 6, 7

Md. Code Ann., Health-Gen. § 4-309(f)................................................................6

**Other Authorities**

Fed. R. Civ. P. 54(b) ................................................................5

Fed. R. Civ. P. 12(b)(6)................................................................4

# INTRODUCTION

RTMS's Opposition, R.93[1] ("Opp."), fails to meaningfully respond to PointClickCare's arguments, and instead engages in misdirection and misstatements of law. Starting on the very first page of its opposition, RTMS asks this Court to apply a notice-pleading standard abrogated nearly two decades ago by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)—all but conceding that its Complaint does not meet the proper standard. And its contention that PointClickCare seeks to insert improper factual matter at the pleading stage is meritless.

Its merits arguments fare no better. *First,* RTMS concedes that its declaratory-judgment request for alleged violation of the Cures Act should be dismissed. Its similar request based on the Maryland Act resorts to tautology, contending that because it asserts a claim for damages, it has a right to seek them—but it is simply not within the class of persons the Maryland legislature sought to protect. *Second*, RTMS offers no nonconclusory response to PointClickCare's explanation that RTMS's hands are unclean because of its inducement of its customers' contractual breach and its refusal to pay PointClickCare amounts that even the Fourth Circuit recognized it should pay. *Third*, RTMS improperly asserts a previously unasserted "negative" antitrust tying theory—but even on its face, that theory fails, because RTMS's own allegations make clear there was no tying agreement here.

*Fourth*, RTMS fails to identify any provision in its contract with its customers that requires them to provide it with bot access to PointClickCare's system, and so its tortious-interference claim fails. That claim also fails because RTMS does not respond to PointClickCare's argument that the purported interference was justified enforcement of PointClickCare's own preexisting agreements with PointClickCare's customers. *Fifth*, RTMS's absurd contention that PointClickCare intended

---

[1] As in PointClickCare's opening brief, citations to "R." are to the docket in this Court and citations to paragraph numbers are to RTMS's Complaint, R.1.

its agreements with its customers to benefit RTMS and likeminded freeloaders is at war with those agreements' express language. The only intended beneficiary of PointClickCare's promises in each agreement is its customer, as RTMS's own allegations confirm. But even if RTMS were an intended beneficiary, it would be bound by express provisions that bar the access it demands. And *sixth*, RTMS's demand for specific performance of the NDA is moot—PointClickCare notified RTMS *before its Complaint was filed* that it had already destroyed RTMS's confidential data.

RTMS's Complaint should be dismissed in its entirety. Its request for injunctive relief should be denied, and this Court should dissolve the preliminary injunction and allow PointClickCare to enforce its contractual rights.

## ARGUMENT

## I.    RTMS mistakes several fundamental legal standards.

***RTMS sponsors the wrong dismissal standard.*** Dismissal is appropriate where (as here) the Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (cleaned up); *see* R.92-1 ("Mot.") at 8–9. But RTMS contends that dismissal should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Opp. at 2–3 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)); *see also id.* at 1 (citing *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005)). Later, quoting another decades-old case that relies on that no-set-of-facts standard, RTMS contends that "dismissals on the pleadings are especially disfavored in antitrust cases." *Id.* at 12 (citing *Broadcast Music, Inc. v. Hearst/ABC Viacom Ent'mt Servs.*, 746 F. Supp. 320, 325 (S.D.N.Y. 1990)).

All of the cases RTMS cites for these propositions pre-date the Supreme Court's express rejection of the no-set-of-facts standard as "an incomplete, negative gloss" that "after puzzling the profession for 50 years … has earned its retirement." *Twombly*, 550 U.S. at 563 (abrogating *Conley*

*v. Gibson*, 355 U.S. 41 (1957)). Moreover, in *Twombly*—itself an antitrust case—the Supreme Court considered and rejected any purported "disfavor[]" concerning dismissing implausible antitrust claims, pointing out that while "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery," it is "quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* at 546. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (cleaned up).

RTMS's contention that its Complaint meets only the abrogated no-set-of-facts standard all but concedes that it does not make the plausibility cut under *Twombly* and *Iqbal.*

***RTMS's proposed factual standard is incoherent.*** Beginning on the first page of its opposition, RTMS assails PointClickCare for supposedly failing to "ask the Court to … look within the four corners of the complaint," asserting that PointClickCare "present[ed] almost seven pages of additional 'facts.'" Opp. at 1. That assertion is wrong. The "Background" section of PointClickCare's motion provided the Court with slightly more than two pages (Mot. at 3–5) of legal and regulatory background, which included citations to the relevant statutes and regulations and to public acts of Congress, the U.S. Department of Health and Human Services, and the Maryland Legislature, all of which this Court may judicially notice. *E.g.*, *Caha v. United States*, 152 U.S. 211, 221–22 (1894) (taking judicial notice of acts of Congress and agencies as among "a mass of that body of public records"). Many of them, indeed, are *also* alleged in RTMS's Complaint. *See* ¶¶ 71–85. PointClickCare then summarized RTMS's Complaint, identifying allegations RTMS made and citing to the paragraphs in which RTMS made them. Mot. at 5–8. Finally, the Background section concluded with a procedural history of this case (Mot. at 8)— which, of course, RTMS did not include in its Complaint because that history followed the

Complaint's filing and service. None of those facts are "additional" in any fashion that would render their inclusion improper.

Setting that aside, however, RTMS *itself* asks the Court to look to facts outside the "four corners of the complaint." *See* Opp. at 3 (arguing that "factual findings from the preliminary injunction do not have to be ignored"). If the Court takes into account the evidence adduced at the preliminary-injunction hearing, it may not limit PointClickCare to the facts alleged in the Complaint while granting RTMS the benefit of extra-complaint evidence to evade dismissal.[2] To be clear, however, the Court need not look beyond RTMS's deficient Complaint, its incorporated documents, and judicially noticeable fact to order dismissal.

***RTMS misapprehends the applicability of law-of-the-case doctrine.*** RTMS argues that the law-of-the-case doctrine mandates applying the Court's "prior holdings concerning both the unfair competition and tortious interference claims."[3] Opp. at 3. RTMS appears to be arguing that the motion to dismiss should be denied simply because this Court concluded that there was a "likelihood of success" on those claims at the *preliminary*-injunction stage. *Id.* (contending that the "standard for a preliminary injunction, which [RTMS] already met, is more stringent" than the no-set-of-facts standard RTMS mistakes for the "plausibility" standard).

On a Rule 12(b)(6) motion, this Court is, of course, not bound by the preliminary-injunction proceedings. The Court did not consider arguments newly raised in the renewed motion to dismiss during those proceedings. Here, adverting to facts that appear on the face of the Complaint, the

---

[2] While there are sound jurisprudential reasons not to disregard RTMS's concessions during the preliminary-injunction proceeding, PointClickCare does not request or consent to the conversion of its motion to dismiss into one for summary judgment, and *RTMS's* request that the Court review extra-complaint evidence should not be given that effect.

[3] To the extent RTMS merely contends that the Fourth Circuit's erroneous good-faith negotiation requirement binds this Court, PointClickCare already conceded as much. *See* Mot. at 3 n.2.

Fourth Circuit asked why RTMS's conduct did not cause breaches of PointClickCare's contracts every time it deploys bots.[4] Further, no judgment having been entered as to any of RTMS's claims, this Court may revisit its own views at any time. Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims … does not end the action as to any of the claims … and may be revised at any time before the entry of a judgment adjudicating all the claims ….."). In any event, as RTMS expressly acknowledges, a preliminary-injunction hearing concerns a different standard from a motion to dismiss, Opp. at 3, reflecting only a *likelihood* of success on the basis of a limited and preliminary record—not on the complaint.

## II.    Count I: RTMS fails to state a claim under the Maryland Act or the Cures Act.

RTMS admits that "the CURES [*sic*] Act does not have a private cause of action." Opp. at 23.[5] Accordingly, the parties are in agreement that this Court should dismiss Count I to the extent it seeks a declaratory judgment with respect to the Cures Act. *See* Mot. at 10.

Meanwhile, RTMS's response on the Maryland Act is disingenuous and misses the point. RTMS is fully aware that the Maryland Act lacks a private right of action for RTMS to bring suit— which is why its counsel unsuccessfully lobbied the Maryland legislature, on RTMS's behalf, to pass an amendment to add a private right of action so that RTMS could sue under it.[6] While the

---

[4] Oral Argument, *Real Time Medical Sys. Inc. v PointClickCare*, No. 24-1773 at 23:50 (4th Cir. 2025) (Heytens, J.: "So, you have no legal right to access that information except that is derivative of that of the skilled nursing facility, right?" Ms. Bruce: "Yes, we don't dispute that." Heytens, J.: "Okay, well, okay, the skilled nursing facilities' contract with PPC forbids the use of bots, why isn't this a breach of contract every single time you do it?").

[5] *See also* R.62 at 204 ("MS. BRUCE: … I'm not suing them for a breach of the Cures Act.").

[6] Maryland Senate Finance Committee Meeting, Discussion of SB0678, March 6, 2025, at 1:35:47, *available at*  https://tinyurl.com/yhaeewzt (Senator Rosapepe: 1:35:47 "So what this bill does is create a private right of action." … Ms. Bruce on behalf of RTMS at 1:39:58: "So we would encourage this panel to go ahead and pass these amendments" … Ms. Bruce at 1:52:29: "there is a need for an enforcement mechanism in a statute that Maryland passed that doesn't have one. *And that is why we came forward with this*." (emphasis added)). This Court may take judicial notice of RTMS's counsel's statements at this public proceeding before the Maryland legislature. *See Savannah River Elec. Co. v. Fed. Power Comm'n*, 164 F.2d 408, 409 (4th Cir. 1947).

Maryland Act provides that a person who "knowingly violates any provision of this subtitle is liable for actual damages," Md. Code Ann., Health-Gen. § 4-309(f), it does not follow that violation of the subtitle renders a violator liable to all the world. The party bringing suit must still be among those the legislature sought to benefit in enacting the law. RTMS, which is neither an EHI custodian nor a nursing home, was not among those persons. *See* Mot. at 10-11. RTMS's only response is the tautological assertion that it has asserted a claim for actual damages and so it must be allowed to recover them. Opp. at 23 (claiming that RTMS "thus possesses a right of action because it seeks actual damages"). But even if RTMS "would benefit from" suing to obtain a windfall under the Maryland Act, that is insufficient reason to conclude that the Act was "intended to confer rights" on RTMS. *Aleti v. Metro Balt., LLC*, 279 A.3d 905, 922 (Md. 2022). RTMS offers no nonconclusory argument to the contrary. Count I should be dismissed.

### III.     Count II: RTMS's nonresponse all but concedes that its hands are unclean.

As PointClickCare explained, under Maryland law, the equitable doctrine of unfair competition is subject to the equitable defense of unclean hands. Mot. at 12–13; *see Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 343 (Md. 1943) (explaining that equity governs an unfair-competition claim). RTMS responds to this argument only glancingly, and only in a footnote to its introduction. Opp. at 2 n.1. The gravamen of that abbreviated argument appears to be that this Court should not consider RTMS's unclean hands on a motion to dismiss. But this Court may rule on affirmative defenses at this stage where the facts necessary to make them out appear on the face of the Complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

Here, as PointClickCare explained, RTMS conceded on the face of its Complaint that it knew of the contractual prohibitions in PointClickCare's contracts with RTMS's customers that barred those customers and their agents from operating bots on PointClickCare's system. ¶ 43. (RTMS's attempt to suggest that enforcing this provision is somehow subject to PointClickCare's

connected-services provisions fails as a matter of basic contract law—the provisions are unrelated and in different sections, and neither refers to the other. *Compare* R.38-13 ("MSA") § 2.2, *with id.* §§ 3.1, 3.3. Despite its awareness that bot use is a breach of those agreements, RTMS intentionally interfered with PointClickCare's contracts with its customers, causing those customers to breach their MSAs by allowing RTMS users to operate bots on PointClickCare's system through the customers' logins. ¶¶ 37, 164(ii). Indeed, RTMS admits that it colluded with those customers to cause them to breach that provision, alleging that RTMS "and the Nursing Facility create an automated user" to access PointClickCare's system.[7] ¶ 37.

RTMS, moreover, nowhere alleges that it ever paid PointClickCare *even a single penny* for access to PointClickCare's system and contends it does not have to pay—a second, separate reason its hands are unclean. ¶ 75(iii) (alleging that RTMS need not pay a fee for access under the preempted Maryland Act); *but see Real Time Med. Sys. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 234 (4th Cir. 2025) (explaining that PointClickCare should "charg[e] higher fees" to RTMS when RTMS demands bespoke access). RTMS acknowledges that its actions imposed costs on PointClickCare, ¶ 90—but its Complaint nevertheless demands *PointClickCare* pay *RTMS*, ¶ 8.[8] In sum, what RTMS misleadingly calls a "decade-long cooperation" between the parties, Opp. at 6, was, in reality, RTMS's surreptitious freeloading.

Both species of inequitable conduct dirtied RTMS's hands in connection with "acquiring the right [it] now asserts"—namely, the purported right to compete free of what it claims is unfair

---

[7] To the extent the Court takes up RTMS's invitation to consider facts found during the preliminary-injunction hearing, those facts only further confirm this point. This Court expressly recognized the bot ban in PointClickCare's contracts. R.69 at 3. It also recognized that RTMS employs automated users. *Id.* at 3–4.

[8] Again, RTMS conceded at the preliminary-injunction hearing that it has not suffered damages. *See* R.61 at 52–54; R.62 at 234.

conduct by PointClickCare while RTMS itself behaves inequitably. *Hicks v. Gilbert*, 762 A.2d 986, 990 (Md. Ct. Spec. App. 2000). RTMS concedes as much by failing to respond to the substance of either of these arguments in its Opposition, instead offering five pages of beside-the-point argument. *See* Opp. at 4–8.

"A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." *Adkins v. Park Hotels & Resorts, Inc.*, 2025 WL 973016 (4th Cir. 2025) (quoting *Grayson O Co. v. Agadir Int'l, LLC*, 856 F.3d 307, 316 (4th Cir. 2017)). And "a passing reference in a footnote is not sufficient to place an issue before the [C]ourt." *Avens v. Dixon*, 2025 WL 379959, at *3 (E.D.N.C. Jan. 9, 2025) (collecting cases). Here, RTMS's "passing shot" in a footnote is insufficient to preserve any argument that its hands were clean. Count II should be dismissed.

## IV.     Count III: RTMS fails to plead tying.

***RTMS pleads no antitrust injury.*** RTMS has not alleged antitrust injury. Under the standard it volunteers, it must allege that "it was excluded from participation in a particular market." Opp. at 14 (citing *Entri LLC v. GoDaddy.com*, 2024 U.S. Dist. LEXIS 185727, at *9 (E.D. Va. Oct. 10, 2024)). Here, of course, not only does RTMS not allege a market with sufficient particularity, Mot. at 15–17, or any anticompetitive effects, *id.* at 17–18, it also does not allege that it was excluded from participation in "the value-based care analytics market." Opp. at 14. Quite the opposite: RTMS affirmatively alleges that it has more than a thousand nursing-facility customers to whom it provides value-based care analytics. ¶ 142. Elsewhere, it alleges that its market share is even larger:  it claims to "partner[s] with approximately 1,700 Nursing Facilities throughout the country" and with "major healthcare insurers, Quality Improvement Organizations …, Accountable Care Organizations …, Health Information Exchanges … and state governments" and provides *all* of them with "a suite of Value-Based Care software." ¶ 13.

Moreover, RTMS does not suggest that PointClickCare's alleged tying has affected any particular geographic market: RTMS alleges that its customers are located "throughout the country." *Id.* In particular, RTMS disclaims any anticompetitive effect *in Maryland*, where RTMS alleges that the "State of Maryland … *competitively selected* [RTMS's] platform." ¶ 16 (emphasis added). Because RTMS does not and cannot plead antitrust injury, Count III should be dismissed.

**RTMS pleads no tying arrangement.** Similarly fatal to its tying claim, RTMS has not alleged any actual tying arrangement. Mot. at 13–15. Its Complaint attempted to assert a traditional tying claim that PointClickCare allegedly "conditioned the purchase of medical records hosting software on the purchase of analytics software." ¶ 142. Perhaps recognizing that the traditional claim was contrary to the facts it affirmatively alleged, RTMS now presses a different claim—a so-called "negative tie" in which buying PointClickCare's hosting is conditioned not on the additional purchase of PointClickCare's alleged competitor analytics software, but on an agreement not to purchase RTMS's software. Opp. at 16–17. RTMS did not assert this claim in its Complaint. It cannot use its 12(b)(6) briefing to amend that Complaint. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

But even taken at face value, this previously unasserted theory fails. The cases RTMS cites explain that a "negative" tying arrangement "condition[s] the sale of one product on *an agreement* not to purchase a second product from competing suppliers." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1178 (1st Cir. 1994) (emphasis added); *see also Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451, 461 (1992) (requiring that the purchaser "agrees that he will not purchase that product from any other supplier"). RTMS alleges no such agreement—it affirmatively alleges that PointClickCare "facially *allows* nursing facilities to purchase hosting software without also purchasing value-based care software that competes with

Real Time" and that "over 1000 Nursing Facilities have chosen to use Real Time's analytics software." ¶¶ 142, 144 (emphasis added). The only reasonable inference from those allegations is that no tying arrangement of any type exists. For this reason too, Count III should be dismissed.

## V.    Count IV: RTMS fails to plausibly allege tortious interference with a contract.

RTMS's response does not and cannot solve the most fundamental problem with its tortious-interference claim: its Complaint nowhere identifies "with certainty and definiteness *facts* showing a contractual obligation" that would require its customers to give it bot access to PointClickCare's EHI repository, such that PointClickCare's alleged interference with bot-using accounts would have caused a breach of that provision. *See RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 440 (Md. 2010). RTMS seeks to gloss over this problem by suggesting, broadly, that any interference of any type with any access RTMS enjoyed via its customers' logins would cause *RTMS* to breach a supposed obligation to "use, modify, copy, process, display, and prepare derivative works" from patients' EHI. Opp. at 10. But whether RTMS breached the agreement is beside the point—the tort is for the party "damage[d]" by the interference to assert. *Lake Shore Invs. v. Rite-Aid Corp.*, 509 A.2d 727, 732 (Md. App. 1986). That is why breach or termination of the contract "*by the third party*" is an element of tortious interference. *E.g.*, *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. App. 1991) (emphasis added).

Moreover, even if RTMS's own breach could satisfy that element of the claim, the Complaint alleges no obligation to perform the acts RTMS cites. Instead, it alleges that the nursing facilities gave RTMS a "license"—*i.e.*, legal *permission*—to perform those activities. ¶¶ 40(i), 151. That license is not a mandate. The language of the contract makes that clear: RTMS's breach theory asserts it had a duty to "modify" the underlying patient EHI, Opp. at 10, but as RTMS conceded and this Court found, RTMS sought and obtained "read only" access to that data, "meaning that it cannot alter [*i.e.*, modify] the electronic medical records on PCC's platform,"

R.69 at 3 n.1 (citing R.61 at 72). Moreover, RTMS nowhere attempts to explain how the facilities' "acknowledg[ment]," ¶ 40(i), that RTMS needs access to patients' EHI somehow creates an affirmative duty for *PointClickCare* to provide RTMS with *bot* access. Because RTMS has not identified any actual breach of a contractual obligation, RTMS's tortious-interference claim fails.

Finally, RTMS offers no response to the argument that—as PointClickCare explained, Mot. at 24–25—its purported "interference" with RTMS's access was justified because it enforced *PointClickCare's own* agreements with its customers. Because PointClickCare's preexisting contracts with the very same parties gave it the "right to cause the [alleged] breach," RTMS's tortious-interference claim fails. *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 511 A.2d 492, 498 (Md. 1986). RTMS's non-response concedes this argument.

## VI. Count V: RTMS was not an intended beneficiary of PointClickCare's contracts.

RTMS is a third-party stranger to PointClickCare's contracts with its customers, not an intended beneficiary of those agreements. Mot. at 25–27. Nor, even in the counterfactual scenario RTMS posits, can RTMS demand that PointClickCare demand that this Court enforce only so much of the contract as RTMS finds beneficial while ignoring the parts RTMS does not like. Mot. at 27.

***RTMS is not an intended beneficiary.*** RTMS argues that it is an intended third-party beneficiary because PointClickCare's customers have the "right to use any embedded third-party software" on PointClickCare's system. PointClickCare's MSAs with its customers do allow those customers to use *certain* third-party services—*i.e.*, services that PointClickCare embeds in its system through its Marketplace program. Such "embedded technology" is limited to third-party technology PointClickCare affirmatively licenses and then makes available on its system. MSA § 3.1(i). RTMS does not allege that PointClickCare licenses its technology—indeed, its lawsuit is premised on the lack of any license. RTMS's services do not qualify as "embedded technology."

11

PointClickCare separately allows its customers to contract with third-party services with whose software platforms PointClickCare has chosen to "establish[] a connection," *id.* § 3.1(ii), but those connected services are subject to PointClickCare's express waiver of responsibility. *See* MSA § 3.3 ("PointClickCare does not warrant or support Connected Services ...."). RTMS's use of PointClickCare's system does not render it a "connected service" within the express terms of the agreement. RTMS itself alleges that it has not established a connection with PointClickCare. *See* ¶ 43. Nevertheless, even if RTMS were a "connected service," such services are not intended beneficiaries of PointClickCare's MSAs given that PointClickCare disclaims any responsibility for the operation or support of those services.

Instead, RTMS is, at most, a "User" of PointClickCare's services. "Users" consist of "*Customer*'s employees, consultants, contractors, and agents, including qualified medical professionals, as *determined and monitored by Customer*." *See* MSA § 1.1 (emphasis added). Under the MSA, to the extent they are beneficiaries at all, Users are not "intended" but "incidental beneficiaries"—nonparties to a contract "who acquire[] by virtue of the promise no right against the promisor or promisee." *CX Reins. Co. Ltd v. Johnson*, 282 A.3d 126, 135 (Md. 2022). There is no indication—much less a "clear[]" one—that "the parties intend[ed] to recognize [Users] as the primary party in interest and as privy to the promise." *Wm. T. Burnett Holding LLC v. Berg Bros. Co.*, 175 A.3d 876, 882 (Md. Ct. Spec. App. 2017) (cleaned up). Instead, under the MSA, Users' access is not for their benefit, but for the benefit of the nursing facilities that employ them. *See* MSA § 1.1 (noting that users are defined by their relationship to the customer, as "determined and monitored by Customer"). That makes sense. After all, a nursing facility's employees have no individual interest in accessing patient EHI. Instead, they need access to that EHI to perform their employment duties to the facility—in turn, to fulfill the *facility's* duty to care for its patients.

Further, RTMS's own allegations make clear that it is *the facilities*, not RTMS, that are the primary parties in interest and thus the only intended beneficiaries of PointClickCare's promises in the MSA. RTMS alleges that it obtains patients' EHI to fulfill its contracts with the facilities so that the facilities can care for patients. *E.g.*, ¶¶ 165 (complaining that RTMS "is unable to provide the same level of … analytics to Nursing Facilities"), 166 (complaining that RTMS "is unable to provide entire categories of … alerts to Nursing Facilities").

The cases RTMS cites, Opp. at 25, only undercut its argument and highlight the narrowness of the intended-beneficiary rule. It must "*clearly* appear[] that the parties intended to recognize [a third party] as *the primary party in interest* and as *privy to the promise*." *CX Reins. Co.*, 282 A.3d at 135 (quoting *120 W. Fayette St, LLP v. Mayor & City Council of Balt.*, 43 A.3d 355 (Md. 2012) (emphasis added)). Nothing in the MSAs suggests that RTMS or any other third party is privy to any promise of access, much less that it is the *primary* party in interest of such promises. "Another factor to consider … is whether the third party is named in the contract or its antecedent agreements." *Id.* (cleaned up). Here, of course, not even the third parties with which PointClickCare actually has relationships (*e.g.*, its Marketplace partners) are named in the MSAs— much less RTMS, a nonparty seeking to siphon EHI from PointClickCare's system for free.

In *Sherwood Brands, Inc. v. Levie*, this Court highlighted that the third-party-beneficiary rule is "a limited exception" and found that the counterclaim plaintiff Levie had "failed to establish that he [was] a third party beneficiary." 2006 WL 827371, at *15 (D. Md. Mar. 24, 2006). There, Levie sought repayment of a loan that the relevant contract expressly stated was to be repaid to a company he owned. *Id.* Even though *the company* was expressly named, *Levie* was not—and therefore he could not recover. *Id.* at 16. RTMS is, in short, even more remote from the MSA than was Levie from the contract at issue in that case.

In *Martin Marietta Materials Inc. v. Redland Genstar Inc.* (*In re Bacx Corp.*), meanwhile, the contract at issue specifically provided that "unsecured creditors … [were] to be paid seventy-five percent" of certain accounts receivable. 1999 WL 33955337, at *4 (D. Md. Sep. 8, 1999). There, this Court found that the provision was expressly directed "to benefit [the company's] unsecured creditors" in that "it establishes the formula whereby they may collect on [the company's] debt to them." *Id.* Here, there is no analogous provision designed to guarantee access to RTMS or any other nonprivy party.

**Even if PointClickCare were an intended beneficiary, it is bound by the contract's restrictions.** In any event, even if it were an intended third-party beneficiary, RTMS could not obtain *more* rights from the agreement than the agreement provides. Mot. at 27 (citing *Coll. of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.*, 752 A.2d 265, 276 (Md. Ct. Spec. App. 2000) & *Acciai Speciali Terni USA, Inc. v. M/V BERANE*, 181 F. Supp. 2d 458, 465 (D. Md. 2002)).

Third-party beneficiaries are bound by the prohibitions on bot use and any other use that "adversely impacts the performance of the Services." MSA § 2.2(x)-(xi). Moreover, PointClickCare also expressly reserves the right to "directly or indirectly, and by use of a disabling device or any other lawful means, suspend, terminate or otherwise deny access to or use of all or any part of the Services by Customer or any User, without incurring any resulting obligation or liability, if … PointClickCare believes, in good faith, that … any User has failed to comply with any term of th[e] MSA." *Id.* § 10.8. Here, of course, RTMS has affirmatively alleged, and this Court has found, that RTMS engages in conduct that on its face violates § 2.2(x) of the MSA. *See* R.69 at 3. RTMS seeks the privilege of continuing that expressly prohibited conduct. ¶ 164. That claim should accordingly be dismissed.

14

**VII.    Count VI: The breach-of-contract claim is moot.**

RTMS continues to pursue its claim involving the NDA between the parties even though RTMS knows full well that PointClickCare complied with the NDA—and the obligation to delete the opposing party's data—before the Complaint was filed. As it has done repeatedly in its opposition, RTMS simply fails to respond to a dispositive point—here, that its breach-of-contract claim for specific performance has been rendered moot by PointClickCare's already-completed performance of the contract provision RTMS now seeks to enforce. Mot. at 27-28; *see Ecology Servs., Inc. v. GranTurk Equip., Inc.*, 443 F. Supp. 2d 756, 767 (D. Md. 2006) (explaining a claim for specific performance was moot where the requested action had already occurred). Unwilling to affirmatively concede that it has no basis to continue pursuing this claim, RTMS spends three pages of its Opposition urging this Court to waste its resources, and those of the parties, considering a dead legal issue. Once again, its failure to respond concedes the point.  Count VI should be dismissed as moot.

**VIII.    Count VII: RTMS's claim for injunctive relief should be denied.**

RTMS's repeated refusal to respond to PointClickCare's arguments implicitly concedes those claims lack merit. Because those claims merit dismissal, it is unlikely to succeed on any of them. Accordingly, its demand for permanent injunctive relief falls with them. Mot. at 28–29. Moreover, should the Court dismiss the meritless unfair-competition and tortious-interference claims on which RTMS's preliminary injunction is premised, it should dissolve that injunction. *Cal. Chamber of Com. v. Becerra*, 2020 WL 1030980, at *5 (E.D. Cal. Mar. 3, 2020).

## CONCLUSION

For the foregoing reasons and those in PointClickCare's opening brief, RTMS's Complaint should be dismissed without leave to amend.

Dated: July 23, 2025

Respectfully submitted,

/s/ *Brian T. Burgess*
Brian T. Burgess (D. Md. Bar No. 19251)
William C. Jackson (Admitted Pro Hac Vice)
Ashley M. Drake (Admitted Pro Hac Vice)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4215
Fax: +1 202 204 7265
BBurgess@goodwinlaw.com
WJackson@goodwinlaw.com
Amdrake@goodwinlaw.com

Jeremy M. Bylund (Admitted Pro Hac Vice)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, DC 10006-1238
jbylund@willkie.com
*Attorneys for Defendant PointClickCare*
*Technologies Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2025, I electronically filed a true and accurate copy of the foregoing with the Clerk of Court using the CM/ECF System, which sent notification of such filing to all attorneys of record. A courtesy copy was also sent to Judge Xinis's Chambers.

<u>*/s/ Brian T. Burgess*</u>
Brian T. Burgess